Moncure, J.
after stating the case, proceeded:
The first question to be considered in this case is, Whether Levy had a right to arrest and detain Arnsthall ? And that question depends upon whether the relation of principal and bail existed between them. Bail are so called, because the defendant is bailed or delivered to his sureties upon their undertaking that he shall be in place; and he is supposed to continue *643 in their friendly custody instead of going to jail. 3 Bl. Com. 290; 1 Rob. Pr. 179. The principal is always considered to be in the actual or potential custody of the bail who are in contemplation of law his jailers. Petersdorff on Bail, p. 405, 10 Law Libr. 225. If therefore Levy was the bail of Arnsthall, he had a right to arrest and detain him.
I think that Levy was the bail of Arnsthall. The act under which the bond was given is entitled “ An act allowing bail in certain cases.” Act of March 31st, 1851, Sess. Acts, p. 36. The first section authorizes the court, judge or justice, on proper affidavit, to direct the defendant in any action or suit to be held to bail for such sum as the said court, judge or justice may think fit; and thereupon the plaintiff may sue out a writ of capias ad respondendum against the defendant. The second section provides, that under such capias the defendant shall be arrested and committed to jail, unless bond be given in the sum aforesaid, with sufficient security, that in case there shall, in the action or suit, be any judgment, decree or order on. which a writ of fieri facias may issue, and within four months thereafter interrogatories be filed, under the fifth section of chap. 188 of the Code of Virginia, with a commissioner of the court wherein such judgment, &c. is, the said defendant will, at the time the commissioner issues a summons to answer such interrogatories, be in the county or corporation in which such commissioner may reside, and will, within the time prescribed in such summons, file proper answers upon oath to such interrogatories, and make such conveyance and delivery as is required by the said chapter 5 or in case of failure to file such answers and make such conveyance and delivery, that the said defendant will perform and satisfy the said judgment,
&c. The surety in the bond is expressly referred to in the body of the act, as well as in its title, by the *644 name of bail. The legislature knew what was the meaning of bail, and it is to be presumed used the in its ordinary and well understood signification. The Code, which went into effect a few months before ^jje passa,ge 0f the act, had abolished bail in civil cases as a consequence of the abolition of the writs of capias ad respondendum and ad satisfaciendum; and instead of the benefits afforded by the writ of ca. sa., had very much extended the lien of the fi. fa.; and to make that extended lien effectual, had provided means of compelling the judgment debtor by attachment if necessary, to discover and surrender his estate. Code, ch. 188, p. 716-719. But the debtor could not be so compelled, unless he were within the jurisdiction of the state; and it might happen that after being sued, he might remove from the state, and thus evade the law. The legislature designed to remedy this defect by the act of March 31st, 1851; and for that purpose restored the right to sue out a capias, and require bail on affidavit verifying the cause of action, and showing probable cause for believing that the defendant would quit the state unless forthwith apprehended. They did not intend to restore the writ of ca. sa. on such cases, nor require that the bail should be bound to render the body of the principal in execution for the debt. They did not intend to change the law in regard to executions, but merely to insure the personal appearance of the debtor after judgment, in order that the lien of the fi. fa. might be enforced. Therefore the obligation of bail, as it formerly existed, was so varied as to conform to the existing law. But this in nowise varied the relation of principal and bail, or the right of the bail to the custody of the principal. That is a common law right, which attaches to the relation of bail wherever it exists, whether created by the common or the statute law, unless there be something in the latter to take it away. The right to *645 require bail in certain civil, and most criminal cases, existed at common law. The statute gave the right in other cases. The obligation of bail in courts and under different laws, has been somewhat variant, according to the different modifications made by practice or by law. But the right of the bail to the custody of the principal is a feature common to all the cases. It exists wherever the principal is in jail, or in the custody of an officer, and to obtain his release therefrom, the bail or surety becomes bound for his personal appearance in future; unless, as before said, there be something in the law to take it away. The purpose for which the appearance is required is immaterial. The statute need not expressly give or recognize the right. It never does give the right, though it sometimes regulates its exercise, or at least prescribes the mode of making the surrender of the principal. Our statute law formerly did this in regard to special bail. But if it had not done this, the common law right of the bail would still have existed. Our statute has never prescribed any regulations in regard to the right of the bail in criminal cases to the custody of his principal. And yet nobody ever doubted the existence of that common law right in such cases. That the right exists in criminal, as well as civil cases, may be seen by reference to Petersdorff on Bail, p. 514, 10 Law Libr. 290. In criminal cases indeed, this writer says, the power possessed by the bail in obliging the accused to fulfill the terms of the recognizance, should be even more unlimited than in civil cases. This right in criminal cases has been recognized by our courts in proceedings by habeas corpus by the principal to obtain his discharge from the custody of the bail; Green's Case, 1 Rob. R. 731; and was recognized by the legislature in the act of March 10th, 1852, authorizing bail in criminal cases to obtain bail pieces. Sess. Acts, p. 77. The bail piece does *646 not give the right to arrest, but is merely evidence of suc^ already vested in the bail. 1 Sob. Pr. 181. bond prescribed by the act of March 31st, 1851, is essentially a contract of bail. A writ of capas is given under which the defendant is to be arrested and committed to jail, unless bond with security be given for his appearance at a certain time and place, and on a certain contingency, to do and perform certain acts prescribed by law. If the bond be given, he is in effect “ bailed to his sureties upon their undertaking that he shall be in place;” and he may well be supposed “ to continue in their friendly custody instead of going to jail.” I therefore think that the act creates the relation of principal and bail, with the incidental common law right of the bail to the custody of the principal; and that in this case Levy was the bail of Arnsthall, and entitled to his custody.
The next question is, Whether Arnsthall was entitled to be discharged from the custody of his bail, under section 4th of the act passed April 16th, 1852, entitled “ An act amending an act passed the 31st of March 1851, allowing bail in certain cases.” The chief object of this act of 1852 was to remedy a defect of the act of 1851 in making a defendant liable to be detained in custody until the expiration of four months after judgment obtained, without any power on his part to prevent it, and though he might be insolvent or ready to make the discovery and surrender required by the Code. The 4th section, therefore, provides that “ while a defendant is in custody, whether under an arrest made heretofore or hereafter, the plaintiff, without having a judgment against the defendant, may file interrogatories to him in like manner as might be done under the 5th sectioh of chapter 188 of the Code, if such judgment had been obtained and a fieri facias thereon delivered to an officer. And the court wherein the case is pending, or a judge of a Circuit *647 court, &c. &c. after reasonable notice to the plaintiff or his attorney or counsel, may discharge a defendant from custody, unless interrogatories be filed within such time as the said court, judge, &c. &c. may deem reasonable; or though interrogatories be filed, may discharge him when proper answers thereto are filed, and proper conveyance and delivery made.” The defendant Arnsthall complied with the requisitions of this section in regard to notice, and moved the judge to discharge him from the custody of his bail on the terms prescribed by the said section; which motion, as before stated, the judge overruled, because the petitioner was not in actual custody of the officer making the arrest, or committed by virtue of such arrest. The question is, Whether Arnsthall, being in the custody of his bail, was not in custody under an arrest, in the meaning of the said section? I think that he was. The section does not require that the defendant should be in close jail to obtain the benefit of its provisions: It merely requires that he should be in custody under an arrest. A defendant in custody of his bail, is in custody under an arrest; and under the original arrest under the capias. The custody is continued from the time of that arrest, and so long as he remains either in close jail, or in the friendly custody of his bail which is substituted therefor. The case therefore comes within the literal terms of the section. It is also within its spirit and meaning. It can matter not to the plaintiff whether the defendant be in close jail, .or in the friendly custody of his bail; so that he be ready to comply with the requisitions of chap. 188, § 5 of the Code. The plaintiff can be subjected to no more inconvenience in the one case than the other, by being required to file his interrogatories. On the other hand, the defendant might be subjected to the same, or nearly the same, inconvenience in the one case as the other. *648 by not being allowed to require the interrogatories to be filed. By not being so allowed, where he is in the custody of his bail, he might be kept in this state for four months after the judgment obtained; although pe might, as in this case, be a resident of another state, and have his family and business therein. This would be a great hardship, which the legislature could not have intended to impose upon him without any corresponding benefit to his creditor. The act of 1852, instead of relieving the defendant according to its obvious design, might do him an injury, if that-were its true construction. The effect of the bond might be to confine him to the custody of his bail until the expiration of four months after the judgment; whereas by remaining in close jail, he might in a short time procure his discharge from all custody by pursuing the mode prescribed by the act.
The word custody in English statutes has been construed to embrace the custody of the bail. The statute 5 Geo. 2, ch. 30, § 5. is an instance of this. That statute enacts that a bankrupt in coming to surrender, shall be free from all arrests or imprisonment of any of his creditors, and after his actual surrender for forty-two days, &c. provided he was not in custody at the time of his surrender. A defendant in custody under the common law right of his bail has been held to be, in custody in the meaning of that statute. Petersdorff on Bail, p. 91 and 406, 10 Law. Libr. 50 and 226.
I think that Arnsthall, in being in the custody of his bail, was in custody under an arrest, in the true intent and meaning of the 4th section of the act of April 16th, 1852, and that he was entitled to the benefit of the provisions of that section.
I am therefore of opinion that the judgment is erroneous and ought to be reversed; and the cause remanded, with directions to the Circuit court to dis *649 charge the defendant from custody unless interrogatories be filed within such time as the said court may deem reasonable; or though interrogatories be filed, to discharge him when proper answers thereto are filed and proper conveyance and delivery made.
The other judges concurred in the opinion of Moncure, J.
Judgment reversed.